Please rise. This court is now in session. Please be seated. Will you call the next and last case, please? 312-0337, Lindy Liu, appellant by Robert Williams v. Illinois Central Railroad Company, et al., at least, by Winston Marley. Mr. Williams? Good morning, Your Honor. My name is Robert Williams. I represent the plaintiff, Lindy Liu. Sitting at counsel table is my partner, Andrew Levine. This is a case, the principal question involved in this appeal. It involves the nature of the interest in property held by railroads, where the property is obtained through condemnation. And in this case, Illinois Central's charter clearly provides that any property taken by condemnation is to be covered by an act to provide for the general system of railroad incorporations, which is what we've been referring to in our briefs as the 1849 Act. In 1991, the 4th District, in the case of Abrams v. Royce, held specifically that the property was originally obtained by condemnation, but the railroad only obtains an easement. And we contend that because Illinois Central only obtained an easement, it had no property interest to sell. Isn't an easement a property interest? Sure. An easement is a property interest, but it can only be sold to a party that is going to use it for the same purpose. So under the law in Illinois, generally a railroad can only sell an easement to another railroad, as long as the property is going to be used for railroad purposes. And we believe that Illinois Central can't sell an easement to a third party where the property is not going to be used for railroad purposes. How would it know what the purchaser is going to use it for? Illinois Central knows, generally, unless they're selling to another railroad, that the property is not going to be used for a railroad. This case is a little unusual because what Illinois Central did was they sold property which was part of an easement and they were continuing to operate a railroad. However, they knew, our contention is that they had no interest that they could sell because they knew the property wasn't going to be used for railroad purposes. They knew that their buyer was operating a business next to the railroad and was going to use it for that purpose. Well, some private owners actually have rail lines coming into their property so that they can load or not. There's a whole variety of businesses that have rail lines coming in for the ease of loading railroad cars. It can happen, but in this particular case it does not. And I believe probably nowadays it's not as common as it used to be where the trains would literally unload onto the property of a customer. But in any event, in this case, it does not apply. And we would ask the court to also look at the case of Folk v. Illinois Central which is described in our brief. In that particular case, the circuit court of Macon County granted partial summary judgment to plaintiffs on the question of whether or not Illinois Central could sell abandoned charter line property in which it didn't have a conveyable interest. The fourth district appellate court also affirmed class certification for a class that's very similar to the class that we're proposing in this case. So we're asking this court that under the reasoning of the Abrams case and under the decisions of the Folk litigation that it reverse the trial court's denying plaintiffs' motion for partial summary judgment, granting defendants' motion for summary judgment, and denying class certification in this case. Well, one of your actions is breach a contract, right? That is the action that's on appeal. And what kind of deed did you get? We got a good claim deed. Okay, so they didn't warrant that they had to be sold. We never contended that there was a warranty deed in this case. Our contention is that we had a contract to purchase property. The contract says that Illinois Central is going to convey an interest in the property. They had no interest to convey it, and therefore it's a breach of contract. We didn't get the consideration that we bargained for. Well, you accepted a deed that, as part of the contract, you accepted a deed that says that whatever interest we got, you got it. That's correct. But it has to be a legal interest. In other words, I can't sell a quitclaim deed to your house if I don't have any legal interest in it. It's the same thing. The underlying land in this case belonged to the owner of the fee and not to Illinois Central, and so therefore our position is that because they had no legal interest that they could convey that it was a breach of contract. It was not the consideration that we bargained for. And Illinois Central's only real defense to this is to say, well, you got color of title, which allowed you to get title within seven years by adverse possession. The problem with this argument is that, number one, we didn't bargain for a right to get title seven years into the future. And number two, adverse possession is not only a claim that Illinois Central has admitted that it can't advance because it would be our defense if the owner of the fee came after it. And what's color of title got to do with adverse possession? They are actually pursuing a statute. I think the word is color of title specifically mentioned in the statute in the cases that they've been relying upon, which is 735 ILCS 5-13-109. And under that statute, if a party pays taxes for seven years and gets color of title, namely some kind of deed that shows that it was given in good faith, that shows that they had some kind of interest in the property, then there are steps that they can go ahead and get title. So it's a statutory adverse possession as opposed to the common law type of theory. But essentially they reduced it to a seven-year period if you pay taxes, but you still have to prove all the elements of adverse possession. And in our case, and in other cases that we've seen, when a railroad sells a property, they don't go and notify the adjoining landowner who would be the owner of the fee, assuming that they have an easement of the property, that they were selling the property and that it wasn't going to be used for railroad purposes. So because of that, we believe that they have not, the statute that I was just describing, has no effect on this transaction or any other one. Okay, so the railroad, one thing that certainly happened, I think, if the railroad gave you a quick claim deed, they've certainly abandoned it and given away whatever interest they have. Yes. So who owns the property? We believe that the fee is still owned by the adjoining landowner, the successor grantee of the original owner of the property at the time of the condemnation, so that the person could be identified. But there's no proof in the record whatsoever that any of the elements of adverse possession were established. And I believe the cases say that in order to establish adverse possession, the standard is very high, and it has to be that you have to essentially show that the owner of the fee has noticed and acknowledged. That didn't happen in this case, and I don't think that that can be asserted as a defense, giving them the right to sell property that they have no ownership interest in. Now, you mentioned the term abandonment. The council has been using abandonment to say, well, in this case, the easement wasn't abandoned. In other cases, it may have been. We think it's irrelevant, because if you don't have an interest in the property to sell in the first place, it doesn't matter whether or not the railroad has abandoned its easement. Because if they contend that they gave our plaintiff possessory rights, well, possessory rights aren't passed by a proof of claim. It comes with a lease. And how can they give possessory rights to occupy land for a purpose that's contrary to the easement purpose? Well, I'm just thinking that if certainly the railroad owns an easement, and so they have a right to use that for railroad purposes, and if you want to use it, even if they bargain away their right to use it as an easement, that gives you at least one person out of the way to your ability to use the property, right? That's true. So there's been some consideration, because without the railroad abandoning its easement, you've still got to deal with the railroad. But they didn't give us a sale interest. For example, if we had approved the property at all and wanted to sell it, we didn't have to be entitled to that property. If they gave us a leasehold interest, or tried to give us a leasehold interest, that interest would have to be consistent for railroad purposes. So there's really no interest they could convey, whether you're talking about legal title or possessory rights, which is what they describe it. Well, but I'm just saying, does their abandoning their easement have value? In other words, if I want access to use that land where they've got an easement, as long as they've got that easement and they're using it for railroad purposes or something like that, I can't do what I want to do with that property if it's something other than railroad stuff. Yes. Well, until they abandon that easement, I can't do that, right? Well, correct. And so why doesn't their abandonment of the easement have value to somebody who wants to come in and use the property for something else? Because whoever uses the property has to use it for railroad purposes. There are several old cases where railroads attempted to, and we cited them in our brief, attempted to lease part of their easement to a third party. And in those cases, there was litigation brought by the owner of the fee saying that they couldn't lease because it was contrary. It wasn't for purposes of the railroad. So you can't even give away, as long as you only own an easement, you can't transfer, you can't lease, you can't do anything with that easement unless it's consistent with the purpose of the easement. Well, again, that's a subsequent user. You can abandon it. You can say, I'm not going to use it. Pay me $10 and I won't use this as an easement anymore. And I'll put that in writing. I'll never... But who are they giving it to? I mean, they still have to deal with the owner of the fee, and that's what they have not done here. Right, but they can't get to the owner of the fee without the easement being gone. In other words, as long as the railroad's got the easement, there's no sense in why go talk to the owner of the fee because the railroad's got this easement through there that really would prevent them from doing what they want with the property. And until the railroad, it seems to me that that easement has some value, or the abandonment of that easement has some value to somebody who wants to use that property for something other than railroad purposes. Well, there's a question whether they can actually subdivide their easement and abandon part of it and use the rest. The law really does not give them the right to just abandon it and sell to a third party because they still only own an easement for railroad purposes. And that's the only interest that they own. So they can't sell it to a third party to use for whatever business they want. The owner of the underlying fee still owns the property. It's their property. So in order to sell anything, Illinois Central would have to deal with the owner of the fee as well as the prospective buyer. And that was not done. That's not the practice. If all these sales are voided, does the railroad have its easement back? In some cases, the property may have been legally gone through legal abandonment proceedings. In other cases, they did not. We're not trying to void the sales at this point. We're trying to figure out damages, assess damages on a class-wide basis. For example, if we wanted to obtain a fee on this property, we would have to file suit by a title, join the owner of the fee, and come to some kind of agreement for damages in order to obtain good title. So it's not automatic. And at this point in the case, the only thing that we're asking the court to do is to make a determination that Illinois Central did not have any legal interest in the property that it sold. And we believe that if you enter into a contract to convey a piece of property and you don't own any legal interest, it's a breach. Somebody sold you the Brooklyn Bridge. So they either got improperly for damages, the purchase price, or the cost to protect title. But we haven't gotten to that point in the case. The trial court granted summary judgment saying that we got, quote, color of title, which we could perfect by adverse possession. And we say that that opinion is wrong. And if we're correct, then not only should a defendant's motion for summary judgment have been denied, our motion for partial summary judgment should have been granted. And we also contend that our motion for class certification shouldn't have been denied, because in a case like this, if you're only talking about a breach of contract, the only issue is whether or not the original property conveyed to the class members was the subject of a condemnation proceeding. And if it was, all the negotiations, all the side issues that are brought up by Illinois Central and the trial court are irrelevant. Tom, you have two minutes. Actually, I think I've actually covered it. Okay. Thank you, Mr. Williams. Mr. Marsh. Good morning, Your Honors. Wes Marsh, hearing for the railroad. Welcome your questions as they come up. What we're talking about here is a breach of contract case only. And what happened is that Lindy Lou owns 17 Speedy Lou operations through Illinois, and they wanted to give them more frontage along the railroad, so they asked the railroad, they called the railroad, they didn't go to them, trying to sell our right-of-way for the mainline track running through Decatur, Illinois. And they said, can you narrow it along our property, which is three acres? And so for 420 feet, this is a width of about 20 feet, this property, as an accommodation to our next-door neighbor, we sold it to them, or released and relinquished by Queen D, the absolute control and ownership of that property, which the railroad had. The day before that closing, if Mr. Allen, the owner of Speedy Lou, had stepped on that property, he was a trespasser. If he tried to put a sign up, it would be taken down. The day after that closing, he had the right to use it as a parking lot. He could have done anything, landscaping, anything he wanted on that property, and he has had the absolute enjoyment of that property now for 11 years. There's no owner out there that was referenced. In fact, at one point, this underlying owner concept, council I think mistakenly said, well, it would be the adjoining landowner. Well, the adjoining landowner is Lindy Lou. So who would the secret or other persons be? Well, as we're discussing, it was a condemnation proceeding in 1852, when Abraham Lincoln was operating around here, and Ada might have been involved in the condemnation proceeding, representing the Illinois Central. And the result was they took Mr. Capel's property for $400 in Decatur back in 1852. The descendants of Mr. Capel, it was probably four to six generations ago, I think the court can take judicial notice of the unidentifiable, they must be around the globe, must have a million different names. There are no parties appearing. If they did, they'd have a one-one-hundredth interest in a bowling alley of property. There's no realistic possibility of a true owner out there. So the question, if there's a policy question, is can the railroad accommodate its neighbors who want to scrunch in on the right of way some way in order to use their property a little better, get a little more ingress and outgress, a little signage, something. Can the railroad do that? And the railroad did. This is not a money-making operation. This is $8,000 they got for this. The processing of this was probably that. Ergo the class action. Yeah. And who knows how many might be in that class. We haven't really gotten to that level. But Judge Shore never addressed the underlying question of whether or not there was a fee involved. And we strongly believe that we did get a fee in this condemnation proceeding, and that's briefed extensively. And I want to get to that, but I want to get to what Judge Shore decided the case on, because you don't have to get to that. The point is, was value given? And there's just absolutely no question that Lindy Liu and Mark Allen got value. He did not ask for a warranty deed. He, in his testimony, said, no one even told me they owned the property. He said, I just sort of assumed it. And so he went and got a contract that promised... The contract uses the defined term, said premises. Said premises is defined as... Here and after call to sell. The interest of the seller in the real estate here and after described and called said premises. So what Illinois Central saw was its interest, whatever that interest is. And that's what, as we all know, what a quick claim deed is. And we have several quotes in our briefs about that, but quick claim deeds are made because the vendor is unwilling to warrant title, and they are accepted because the grantee is willing to take the hazard of title. Well, that's what happened here. Whatever was wrong with that title, Lindy Liu agreed to just take what we call possessory right. Because again, a railroad easement is not like a water easement or electrical easement. It is an easement for safety and other purposes. The railroad can use that property completely and no one else to the exclusive right of anyone else. And we could have put fuel tanks, we could have put ballasts, we could have put ties piled up next to the yard of Mr. Mark Yellen's Lindy Liu speed loop. And after we gave him the quick claim deed, we couldn't do any of that. So was value given? Absolutely it was. But interesting fact, value doesn't even have to be given. Consideration includes not only transfer or conveyance to somebody, but it includes a detriment to the seller. So they don't even need this whole concept that they stuck on, there's a conveyance or a transfer, is a non-separator. You don't even need that. And Judge Shore recognized that. Now, he also kind of liked the idea in addition to what I've just been covering. It's clearly value. But he also liked this idea of color of title just to make that clear. Under this possession statute, you normally have to occupy the land so that the community knows that you're kind of controlling that land for 20 years. There's two statutes, one without color of title, one with color of title. If you have a color of title, and there's a case right on point on this, it says a deed from the Illinois Central in a parallel situation, in a quiet title case, gave them color of title. We cite it. So if that happens, it's down to seven years. So you save 13 years. Incidentally, this whole transaction happened in 1991, and they've been paying taxes for over 11 years, they've been controlling the property. If, miraculously, these underlying owners were to appear on their doorstep and say, aha, we actually want that fully inalienable property back, they would lose because of adverse possession. And I just want to take it even one step further. If all of that happened, and for some reason, Lindy Lou never took enough control that didn't barricade it in like they were supposed to do, the underlying owners would still lose because the railroad would own that property because it's still a mainline operating railroad. Also, because of that, it's differentiating all these cases that they cite because you can transfer when you're still an operating railroad. And there's one case we cite on that, but it makes common sense for the business reasons we cited. We just discussed. It makes sense that you'd be able to sell these parts of your right-of-way to accommodate a trucking company or whoever it is that's loading up or working right next to the railroad. I'm rambling a little bit, and I left my notes way off, but a lot of things they didn't say. There's no duress and no special circumstances here. This is a highly educated, sophisticated business, and they completed a purchase for $3.6 million the day before. They usually use an attorney. They didn't use an attorney this time. Their equities favored Illinois Central, who was doing a favor. It did something they didn't have to do, and now they're being held up for it. Illinois Central, incidentally, did not know that the property had been condemned. Illinois Central, when it sells these rights away, has enough experience to know that, and this is affidavit in the record, and you can read this in detail, but basically, it always ends up murky. It's always complex. These titles go way the heck back. It's handwritten deeds. It's never just, boom, we have fee or we don't have fee or whatever. It's always this and that. They have an absolute rule. They'll never give a warranty deed. They're always going to give a quick payment deed anyway. The contract says, if you want to look at get title insurance or have a search, you, the buyer, you go ahead and do that. You have 20 days, absolutely grace period, you can walk away from this contract if you don't like the title, but we're not doing it, you are. There's a beautiful restatement of contracts that I found outside the illustration of exactly that case. It actually uses that as an example. It says that's a valid contract. So, color of title. At this point, I'd like to go on to Abrams v. Royce. I don't know how much time I have left, but that is a case that everything rides on from the plaintiff's perspective because they view that case as saying that every railroad condemnation out of this 1849 statute ends up being an easement. We think, first of all, Abrams v. Royce is distinguishable from this circumstance. First of all, because as I keep saying, this is still an operating railroad. That was not true, and it was totally abandoned. The tracks had been torn up. In Abrams v. Royce, the right-of-way was truly abandoned. Here, it was not. But the case is also distinguishable because in that case, the condemnation order uses the word, as the court says, it mainly says right-of-way. It does use the word fee at one point, but it says mostly it's saying right-of-way, which the court reads as an easement language. Now, when Abe Lincoln or whoever drafted our language, right-of-way does not appear. There's no word, easement doesn't appear, nothing like that. So, we believe, one could readily believe, if they researched it, that we had a fee coming out of that condemnation order. So that's different than the Abrams v. Royce case. But we also think Abrams v. Royce is just poorly reasoned. I'll put this nicely. The court looks at this 1849 statute, and the statute reads the railroad shall become ceaseless if there's condemnation in 1849. I'll put this in historical perspective. Illinois becomes a state in 1818. In 1845, Illinois passes something called the Illinois Conveyances Act, and it's kind of a rejection of the English complex bundle of sticks approach with lots of different interests and future interests and stuff. It says instead, every conveyance shall be construed as a fee simple. The exact wording of that is quoted in it says, every estate in land which shall be granted shall be deemed a fee simple estate of inheritance if alas a state be not limited by express words like duration or easement or something like that. Those would be express words. Well, here, then four years later, they then pass a statute that is trying to assure the railroads that they're going to get this property that they need since they're trying to encourage the building of railroads. So they pass a statute that says the railroad shall become seized in fee. This is a condemnation of a right of way. Shall become seized in fee of all land and real estate described in such an order blah blah blah and may take position and hold and use the same for the purposes of said road. Well, Abrams case goes on. Oh, that's contradictory and ambiguous because it says purposes of said road and yeah, it does say shall become seized in fee, but they end up saying contradictory things like they call, well, we find that they have a fee in the easement. Whatever that is. Okay, so I don't think there's any contradiction here at all. Statute in 1849 said the railroad shall become seized in fee. That's crystal clear. And then it says it may take possession. That's suggesting it may not take possession. It may use the same for the purposes of said road. It may not. They have it in fee. The statute says that. That's what we understood or reasonably understood. And certainly, the owner of Central Railroad would love to have this court take a look at Abrams and reconsider it and decide it correctly in our opinion. But, you don't need to get to that issue. Judge Short didn't. There's really no need to do so. Because clearly, value was given. Clearly, Ashley Lindy Lewis iconed that property every bit as if he had a fee simple transfer to him. From the day of the closing to today, no person has interrupted their control and ownership of that property. So, they clearly have an interest. Let me get one minute on class certification, which I don't think you get to at all because the Lindy Lewis case is, I think, clear. But, if you did somehow get to the class issues, first of all, I'd say Lindy Lewis is not an adequate representative of any such class because this is not abandoned right of way. It's still operative. But, secondly, Judge Short did not abuse his discretion. That's a very difficult and high standard in finding that this is not a class. Each transaction would be significantly different. Condemnation order might be different. What if the person who bought Lindy Lewis had read in mind, thinking, well, this is what I want. I think that might be a fee. What if there was title insurance involved on the buyer's part? There would be many issues. Damages would be individually determined. And so, we think that you would never certify this as a class reasonably anyway. But, Lindy Lewis case, it's purely a breach of contract case. That's all it is. There's no breach of contract because the railroad did exactly what this contract suggested that they do or indicated they should do. Thank you very much. Any questions? Mr. Williams, some rebuttal? First of all, they're challenging the holding of Abrams insofar as it applies to this case. And at the hearing, counsel made the following statement. And I quote, we don't argue that it was feasible. It's because the underlying deeds don't support that argument. So I think this tends to be in the easement vicinity. And the actual citation of this is found on page 8 of our opening brief with note 1. But, you know, counsel tries to back two things. One, disagree with the holding in the Abrams case. And then second, he goes into this thing about the language in the condemnation order. And they want, we have a pretty illegible condemnation order in this case. Illinois Central went to great lengths in trying to type the order. And if you look at the language in the portion that was signed by it says that the, after it talks about the compensation to be given, it says the compensation was fixed for the parcel of land, quote, to be taken and used by said company for the purposes of said railroad. And language contained in condemnation orders always talk about property being taken and used for purposes of the railroad. So I don't think that there's any distinguishing character about the condemnation order in this case. And the condemnation order that they were talking about in Abrams. Let me ask you one question. And that is, assuming there had been no sale, Lindy Lou wants to use that property, right? If they had not bought, if they had not done what they had actually done here, how would they have gone about getting the use of it? I think they would have to get consent of the owner of the underlying fee. But even with the, you think that would trump the right-of-way with the operating railroad? If the railroad and the owner of the fee signed off on it, either on a sale or a lease, I don't think it would have been a problem. The council keeps saying we have to find the defendants of the original owner, Mr. Patel, from the 1850s. But easements for railroad purpose passed with the land, so it's always in the hands of the landowner. Or landowners, because we don't know how the property has been subdivided over the years, but it's not that hard to find. But without the railroad's consent, you can't, Lindy Lou can't use it, right? Both. Unless they abandon, unless you could, what, bring an abandonment proceeding and say you've abandoned your... I don't know that you could bring an abandonment proceeding for one little sliver of property where the railroad is still operating. But the question is whether or not you can transfer that property if it's not going to be used for the purpose for which it was condemned in the first place. And I think you have to have the consent of the underlying landowner. So, and Lindy Lou has the property and they're using it just the way they want to use it, right? But the question is not... Actually, they're not, because they're afraid to perfect it. After the folk litigation, Lindy Lou and a number of other people contacted us, because we were involved in that case, about concern about the property that they bought from Illinois Central, and whether or not they have any legal interest in this property. I mean, who wants to perfect a lot that you purchased if somebody else is going to come and claim it down the road? So there was a lot of concern. And there were a lot of cases, and most of the cases, except for the breach of contract action of Lindy Lou, all of these cases ended up getting thrown out, essentially, for statute of limitations purposes. So we're pursuing this case with Lindy Lou on behalf of the people who got easements, who actually purchased easements. And we believe that not only is Abrams correct for Lindy Lou, but for all the other people who, within the statute of limitation period, might have a claim for purchasing something that Illinois Central had no legal basis to sell. And I agree with counsel insofar as this appeal does rest on the validity of the Abrams opinion. And I'd like to draw the court insofar as class certification is concerned. The court's ruling in 2007 on a case called Ramirez v. Smart Corporation, in which the court said that a class can properly be prosecuted where the defendants allegedly acted wrongfully in the same basic manner to an entire class. In such circumstances, the common questions predominate, and the class is not defeated. And we think that that's exactly what happened here. All of these individual issues that counsel is bringing up about how smart our plaintiff is, he's a good businessman, and he had other transactions, it's all irrelevant. The question is whether or not they've reached a contract. You don't look at intent. You don't look at all these individual issues of sales negotiations. It's all irrelevant. Did Illinois Central have a legal interest that it could convey? And if it didn't, there's a breach of contract, and if it didn't, the case is proper for class certification. Also, I'd like to point out, too, counsel is saying things that weren't in the record, but also things that are not in the record is that Illinois Central is in the real estate business. They sold a lot of property in the 80s, and they have extensive sales files. They can pull any sales file and go to the exact document on how that piece of property was obtained, whether it was by fee simple determinative, whether or not it was by easement, or whether or not it was by fee simple, whether there was a condemnation. The original underlying document is there. So they could check it if they want to. Thank you both for your arguments here this morning. This matter will be taken under advisement. A written disposition will be issued, and right now, the court is adjourned. The court is now adjourned.